# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| RB Alden Corp., | : |
|        Petitioner | : |
| | :   No. 73 F.R. 2011 |
|       v. | : |
| | :   Argued: February 8, 2017 |
| Commonwealth of Pennsylvania, | : |
|        Respondent | : |

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
             HONORABLE ROBERT SIMPSON, Judge
             HONORABLE P. KEVIN BROBSON, Judge
             HONORABLE PATRICIA A. McCULLOUGH, Judge
             HONORABLE MICHAEL H. WOJCIK, Judge
             HONORABLE JULIA K. HEARTHWAY, Judge[1]
             HONORABLE JOSEPH M. COSGROVE, Judge

OPINION BY
JUDGE McCULLOUGH                FILED: September 12, 2017

Presently before this Court are the exceptions filed on behalf of the Commonwealth of Pennsylvania (Commonwealth) and RB Alden Corp. (Taxpayer) to this Court's order filed June 15, 2016, which reversed the order of the Board of Finance and Revenue (Board) denying Taxpayer's request for relief and directing the Department of Revenue (Department) to calculate Taxpayer's corporate net income tax (CNIT) without capping the amount that Taxpayer can take on its net loss carryover deduction.

---

[1] This case was decided before Judge Hearthway's service on the Court ended on September 1, 2017.

Taxpayer alleged that it owed no Pennsylvania corporate net income tax on a $29.9 million capital gain profit resulting from the sale of part of a partnership interest for the following reasons:

- gain from a sale of the partnership interest is "nonbusiness income" under Section 401(3)2.(a)(1)(D) of the Tax Reform Code of 1971 (Code),[2] not "business income" under Section 401(3)2.(a)(1)(A) of the Code;[3]

- the gain must be excluded from its apportionable tax base under the doctrines of multiformity or unrelated assets;

- the gross proceeds from the sale of the partnership interest should be sourced to New York, the state in which it is headquartered, for purposes of calculating the sales factor of its corporate net income tax apportionment fraction, rather than Pennsylvania, where the property from which the sale is derived is located;

- under the tax benefit rule, it is entitled to exclude from business income the gain from the sale because it had previously taken a deduction for which it received no benefit; and

- under *Nextel Communications of Mid-Atlantic, Inc. v. Commonwealth of Pennsylvania*, (Pa. Cmwlth. 2015) (hereafter *Nextel*),[4] limiting its net loss carryover deduction to $2 million violates the Uniformity Clause of the Pennsylvania Constitution, PA. CONST. art. VIII, §1.

---

[2] Act of March 4, 1971, P.L. 6, No. 2, *as amended*, 72 P.S. §7401(3)2.(a)(1)(D).

[3] 72 P.S. §7401(3)2.(a)(1)(A).

[4] We note that the Commonwealth has filed an appeal of *Nextel* with our Supreme Court, which remains pending at this time.

The Board rejected each of Taxpayer's arguments. In our June 15, 2016, decision,[5] this Court agreed with the Board that the income gained by Taxpayer from the sale of a portion of the partnership was properly treated as business income subject to tax in Pennsylvania and declined to adopt the tax benefit rule in the context of the corporate net income tax. However, we concluded that the $2 million limit on the amount of the net loss carryover deduction set forth in section 401(3)4.(c)(1)(A)(I) of the Code, 72 P.S. §7401(3)4.(c)(1)(A)(I), violated the Uniformity Clause of the Pennsylvania Constitution, PA. CONST art. VIII, §1, as it applied to Taxpayer. Hence, we reversed the Board's decision and directed the Department to calculate Taxpayer's corporate net income tax without capping the amount that Taxpayer could take on its net loss carryover. Both the Commonwealth and Taxpayer have now filed exceptions to our decision.

## Commonwealth's Exceptions

The Commonwealth takes exception to this Court's conclusion that the $2 million limit on the amount of the net loss carryover deduction set forth in section 401(3)4.(c)(1)(A)(I) of the Code violated the Uniformity Clause of the Pennsylvania Constitution as it applied to Taxpayer. In this regard, the Commonwealth takes specific exception to this Court's findings: that such a limitation created unequal tax burdens on similarly situated taxpayers; that effective tax rates, rather than statutory tax rates, must be uniform; that *Nextel*, or the formula used therein to calculate a corporation's effective tax rate, has any application to this case; and that the creation of any separate classes of corporations with unequal tax burdens resulting from

---

[5] *R.B. Alden Corporation v. Commonwealth*, 142 A.3d 169, 182 (Pa. Cmwlth. 2016).

3

application of the net loss carryover deduction limitation was unreasonable, arbitrary, or not rationally related to a legitimate state purpose.

The Commonwealth also takes exception to this Court's finding that limiting a tax deduction for sensible budgetary planning is not a legitimate state purpose sufficient to withstand a uniformity challenge, as well as this Court's purported failure to analyze the limitation as an equal protection challenge, under which the broad legislative goal of assuring stability in state finances is a relevant consideration. In any event, the Commonwealth takes further exception to this Court's conclusion that Taxpayer overcame its heavy burden in challenging the constitutionality of the limitation. Finally, the Commonwealth takes exception to this Court's remedy that allowed Taxpayer to deduct an unlimited amount of net operating losses, which reduced Taxpayer's tax liability to zero and arguably does not comport with legislative intent.

As stated in our June 15, 2016 decision, the Commonwealth acknowledged that "this Court held in *Nextel* that the Pennsylvania net loss carryover deduction violates the Uniformity Clause." *R.B. Alden Corporation*, 142 A.3d at 184. While noting that the Commonwealth properly identified the limited application of *Nextel* to the taxpayer and tax year at issue in that case, we concluded that nothing prevented us from engaging in a similar analysis in this case, i.e., whether the net loss carryover deduction limitation violated the Uniformity Clause as applied to Taxpayer herein. Ultimately, we concluded that the limitation violated the Uniformity Clause because it created classes of taxpayers based on their taxable income, i.e., taxpayers with $2 million or less in taxable income could offset 100% of their taxable income and would not have to pay any CNIT, whereas taxpayers with more than $2 million in

4

income could only offset a maximum of $2 million and would have to pay CNIT on the remaining income.

The Commonwealth presently argues that our reliance on *Nextel* is unwarranted, as that case is factually distinguishable from the present case, especially because *Nextel* involved a request for a refund, whereas Taxpayer herein is seeking a reassessment. We fail to see the significance of this differing procedural posture or how it would alter the constitutional question presented in this case as applied to Taxpayer. In other words, such a constitutional challenge is not dependent upon or precluded by the manner in which the underlying case proceeds through the system. Moreover, we note that the Commonwealth utilizes a significant portion of its brief to explain why *Nextel* was wrongly decided. However, the issue herein relates to Taxpayer, not the taxpayer in *Nextel*. The Commonwealth had ample opportunity to present its arguments in *Nextel* and that matter was finally decided by this Court on November 23, 2015.[6]

The Uniformity Clause states: "All taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax . . . ." PA. CONST. art. VIII, §1. As we explained in *R.B. Alden Corporation*:

> Although the Uniformity Clause does not require absolute equality and perfect uniformity in taxation, the legislature cannot treat similarly-situated taxpayers differently. Where the validity of a tax classification is challenged, "the test is whether the classification is based upon some legitimate distinction between the classes that provides a non-arbitrary

---

[6] The Commonwealth filed exceptions to this Court's order. However, the Commonwealth subsequently filed an application to waive briefing and argument on these exceptions. By order dated December 30, 2015, we granted the Commonwealth's application, overruled its exceptions, and entered judgment in favor of Nextel Communications. The Commonwealth then filed an appeal with our Supreme Court, which remains pending.

and 'reasonable and just' basis for the difference in treatment." In other words, "[w]hen there exists no legitimate distinction between the classes, and, thus, the tax scheme imposes substantially unequal tax burdens upon persons otherwise similarly situated, the tax is unconstitutional." *Nextel*, 129 A.3d at 8 (citations omitted).

142 A.3d at 185.

Contrary to the Commonwealth's argument, the net loss carryover deduction limitation creates separate classes of taxpayers/corporations with unequal tax burdens, based solely on income. Pennsylvania law clearly provides that the amount of a taxpayer's income is not a reasonable distinction on which to treat taxpayers differently. Our Supreme Court established the same long ago in *In re Cope's Estate*, 43 A. 79 (Pa. 1899), wherein it stated, "[t]he money value of any given kind of property, such as that specified in the act can never be made a legal basis of subdivision or classification for the purpose of imposing unequal burdens on either of such classes, or wholly exempting either of them from any burden." *Id.* at 82. While the Commonwealth asserts that *In re Cope's Estate* applies only to property tax, we cannot agree. Indeed, our Supreme Court recently discussed this "basic principle" from *In re Cope's Estate* in *Mt. Airy #1 LLC v. Pennsylvania Department of Revenue*, 154 A.3d 268, 275 (Pa. 2016), which involved a challenge to the constitutionality of Section 1403(c) of the Pennsylvania Race Horse Development and Gaming Act, 4 Pa.C.S. §1403(c) (declaring the municipal portion of the local share assessment levied against all licensed casinos' gross slot machine revenue to be violative of the Uniformity Clause).

Further, in this regard, we disagree with the Commonwealth insofar as it argues that the effective tax rate analysis set forth in *Nextel* was incorrect and that the net loss carryover deduction itself, rather than the limitation, created the non-uniformity. The non-uniformity in this case stems from the $2 million limitation

6

imposed upon Taxpayer by section 401(3)4.(c)(1)(A)(I) of the Code.[7]   Any corporation with Pennsylvania-apportioned income in excess of $2 million and with net operating losses in excess of said income, was limited to a net loss carryover deduction of $2 million.  A corporation in such a position was required to pay CNIT on any income exceeding that amount, whereas a similarly-situated corporation, but with less than $2 million in income, would not have to pay any CNIT.  The only distinguishing factor between these two corporations is the amount of taxable income in the applicable year.

Additionally, the fact that the net loss carryover deduction can be carried over for a period of 20 years effectively redefines the measuring period for determining tax liability.  The limitation creates non-uniformity within this redefined measuring period, as a corporation to which the limitation applies is taxed at a higher effective rate within the redefined period.  Practically speaking, the fault is the same as the one our Supreme Court found in *Mt. Airy #1 LLC*, i.e., any casino outside of Philadelphia to which the municipal portion of the local share assessment applied was effectively taxed at a higher rate, resulting in a lack of uniformity.

Finally, the Commonwealth seeks clarification from this Court regarding a footnote in our June 15, 2016 decision stating, "[a]lthough the

---

[7] The Commonwealth asserts that, should this Court uphold its earlier finding that the limitation was unconstitutional, we must strike the entire net loss carryover deduction.  Because the limitation, not the deduction itself, creates the non-uniformity herein, we see no reason to strike the entire deduction.  Additionally, the Commonwealth asserts, relying on *Mt. Airy #1 LLC*, that any relief due Taxpayer should be prospective.  However, the Commonwealth failed to raise this issue in the underlying matter and, hence, it is waived.  *Commonwealth v. Boros*, 620 A.2d 1139, 1143 (Pa. 1993) (failure to raise issue below constitutes a waiver of that issue for purposes of appeal).  Moreover, even if not waived, prospective relief would be meaningless in this case.  Here, we are concerned with a single tax year, 2006, and the net loss carryover deduction limitation as applied to Taxpayer in that year.  Taxpayer has not had taxable net operating income since 2006 and is unlikely to have any in the future against which a net loss carryover deduction could apply.

Commonwealth is correct in that *ACF Industries*[8] analyzed a statute that is not relevant to this case and that it was decided before the Code was even enacted, this Court, in *Glatfelter I*[9] and the Supreme Court in *Glatfelter II*,[10] used *ACF Industries* in determining whether the multiformity or unrelated assets doctrines apply, even after the definition of 'business income' was amended in 2001." *RB Alden Corporation*, 142 A.3d at 178 n.9. The Commonwealth asserts that, while this Court rejected Taxpayer's argument that it engaged in a separate and distinct business that did not contribute to its Pennsylvania business, said footnote created confusion because the multiformity and unrelated assets doctrines are no longer viable and have been superseded by business or non-business income analysis, which was used in *Glatfelter I* and *Glatfelter II*. However, the footnote accurately reflects the dispositions by this Court and our Supreme Court in those cases, both of which discussed the *ACF Industries* case.

For the reasons stated above, the Commonwealth's exceptions are overruled.

**Taxpayer's Exceptions**

Taxpayer's exceptions relate to this Court's discussion regarding application of the tax benefit rule in our June 15, 2016 decision. Taxpayer first takes exception to the statement in the Majority decision that "[n]othing in the Stipulation

---

[8] *Commonwealth v. ACF Industries, Inc.*, 271 A.2d 273 (Pa. 1970).

[9] *Glatfelter Pulpwood Co. v. Commonwealth*, 19 A.3d 572 (Pa. Cmwlth. 2011), *aff'd*, 61 A.3d 993 (Pa. 2013).

[10] *Glatfelter Pulpwood Co. v. Commonwealth*, 61 A.3d 993 (Pa. 2013).

8

states that Taxpayer attempted to take a tax deduction in a prior year without tax consequences; nor have any tax returns been filed for the prior years." *R.B. Alden Corporation*, 142 A.3d at 182. Taxpayer asserts that such a statement is directly contrary to the Joint Stipulation of Facts (Joint Stipulation) dated August 28, 2015, wherein the parties agreed that:

> 28. For each tax year beginning in 1989 through and including Fiscal Year 2006, the Partnership incurred and reported a taxable loss from operations, which losses were passed through pro-rata to [Taxpayer]. [Taxpayer] filed federal income tax returns for each tax year from 1989 through and including Fiscal Year 2006 and reported thereon its share of the Partnership's operational losses.

> . . .

> 37. [Taxpayer] filed Pennsylvania Corporate Tax Reports for each tax year from 1989 through and including Fiscal Year 2006 and reported thereon its share of the Partnership's operational losses. [Taxpayer] did not file an income tax return in any state other than Pennsylvania and never apportioned any of its Pennsylvania taxable income or loss for any tax year.

> 38. [Taxpayer] was unable to use its share of the Partnership's losses to reduce Pennsylvania taxable income during the tax years prior to Fiscal Year 2006 as neither [Taxpayer] nor the Partnership generated any Pennsylvania taxable income during those years.

(Taxpayer's Exceptions, ¶1; Joint Stipulation, ¶¶28, 37, 38.)

Taxpayer next takes exception to the Majority's conclusion that the deductions that it seeks to add back to basis under the tax benefit rule "are in no way related to the capital gain from the sale of the Partnership interest." (Taxpayer's Exceptions, ¶2.) Taxpayer argues that this conclusion is factually and legally

9

incorrect. More specifically, Taxpayer asserts that "the reduced basis, and the capital gain calculated using the reduced basis, were directly connected with – indeed solely attributable to – the prior loss deductions. The failure to add back the losses to basis was improper because the losses never gave Taxpayer any tax benefit when they were incurred." (Taxpayer's Exceptions, ¶2.)

Taxpayer's third and final exception is to the Majority's conclusion that Congress' 1984 amendment to section 111 of the Internal Revenue Code (IRC), 26 U.S.C. §111, which addresses the tax benefit rule, did not modify the narrower Treasury Regulation §1.111-1(a) adopted many years earlier. The Majority opinion states, "courts are required to afford an agency discretion to interpret a provision of the agency's organic or enabling statute unless it is inconsistent with the provisions of that statute . . . ." *R.B. Alden Corporation*, 142 A.3d at 183. Taxpayer stresses that statutes take precedence over regulations. Taxpayer notes that Treasury Regulation §1.111-1(a) provides, "Section 111 [excludes amounts] from gross income to the extent of the 'recovery exclusion' . . . *but not including deductions with respect to depreciation, depletion, amortization, or amortizable bond premiums.*" 26 C.F.R. §1.111-1(a) (emphasis added).

Taxpayer also notes that the 1984 amendment to section 111 of the IRC expanded the section's application from "recovery exclusion" to "Recovery of tax benefit items," and section 111(a) was broadened to provide that "[g]ross income does not include income attributable to the recovery during the taxable year of *any amount* deducted in any prior taxable year to the extent such amount did not reduce the amount of tax imposed by this chapter." 26 U.S.C. §111(a) (emphasis added). Taxpayer states that the amendment removed prior language limiting recovery to bad

debts, prior taxes, and delinquency amounts, and that, at present, there is no limitation on the types of recovery covered by the statute.

However, in light of our decision to overrule the Commonwealth's exceptions to our June 15, 2016 decision, concluding that, consistent with *Nextel*, the $2 million net loss carryover deduction limitation set forth in section 401(3)4.(c)(1)(A)(I) of the Code violates the Uniformity Clause of the Pennsylvania Constitution as it applies to Taxpayer, any exceptions of Taxpayer to this Court's analysis of the tax benefit rule are hereby rendered moot. Further, because the limitation is unconstitutional as applied to Taxpayer, Taxpayer would be entitled to a 100% offset of its corporate net income tax, thereby resulting in Taxpayer owing zero tax to the Commonwealth for Fiscal Year 2006 (the same result Taxpayer sought through application of the tax benefit rule).

_____
PATRICIA A. McCULLOUGH, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

RB Alden Corp.,                 :
           Petitioner        :
                            :   No. 73 F.R. 2011
         v.                  :
                            :
Commonwealth of Pennsylvania,   :
           Respondent      :

## ***ORDER***

AND NOW, this 12th day of September, 2017, the exceptions filed on behalf of the Commonwealth of Pennsylvania are overruled. The exceptions filed on behalf of RB Alden Corp. are dismissed as moot.

_____
PATRICIA A. McCULLOUGH, Judge