620 A.2d 1139

COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING, Appellant,

v.

Mark D. BOROS, Appellee.

COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING, Appellant,

v.

Cheryl Lynn BROWN, Appellee.

COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING, Appellant,

v.

David A. CLAYTON, Sr., Appellee.

COMMONWEALTH OF Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING, Appellant,

v.

Paul E. HUMBERT, Sr., Appellee.

Supreme Court of Pennsylvania.

Argued Sept. 24, 1991.

Decided Feb. 26, 1993.

John L. Heaton, Chief Counsel, Harold H. Cramer, Asst. Chief Counsel, David R. White, Asst. Counsel, Timothy P. Wile, Asst. Counsel-in-Charge, Harrisburg, for appellant.

Thomas B. Kostolansky, Donora, for Mark D. Boros.

Thomas O. Vreeland, Barron P. McCune, Jr., Washington, for Cheryl Lynn Brown.

Thomas J. Graham, Finder, Allison & Graham, Washington, for David A. Clayton, Sr.

Ewing D. Newcomer, Newcomer & Newcomer, Uniontown, for Paul E. Humbert, Sr.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## OPINION

NIX, Chief Justice.

Appellant, Commonwealth of Pennsylvania, Department of Transportation, Bureau of Driver Licensing ("Department"), seeks review from the order of the Commonwealth Court, 125 Pa.Cmwlth. 372, 558 A.2d 121, which remanded three license recall cases to the Court of Common Pleas for certain findings of fact.[1] The question presented in this appeal is whether the Commonwealth Court erred in raising, *sua sponte*, Section 504 of the Federal Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 794 (1988),[2] as an affirmative defense to challenge the Department's actions.[3] For the reasons that follow, we vacate the Commonwealth Court order and remand to the Commonwealth Court for a determination of the issues initially raised and briefed by the parties.

1. The Commonwealth Court also remanded to the Court of Common Pleas a fourth case involving a school bus driver whose license was recalled because of the driver's heart condition. The fourth appellee, Paul Humbert, Sr., died while the matter was pending. Therefore, the appeal at No. 38 W.D. Appeal Docket 1990 is dismissed as moot. *See In re Gross*, 476 Pa. 203, 382 A.2d 116 (1978).

2. Section 504 of the Federal Rehabilitation Act of 1973, 29 U.S.C. § 794 (1988), provides in pertinent part:

    No otherwise qualified individual with handicaps in the United States, as defined in [29 U.S.C. § 706(8)], shall, solely by reason of her or his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance....
    29 U.S.C. § 794(a).

3. Appellant also raises issues involving the application of the Rehabilitation Act in license revocation cases. However, since we find that resolution of the first issue raised is dispositive in this matter, we need not address any claims predicated upon the Rehabilitation Act.

## I. Facts and Proceedings in the Court of Common Pleas

### No. 35 W.D. Appeal Docket 1990

Mark D. Boros, appellee, was involved in a motor vehicle accident, as a result of a seizure, on January 11, 1987. Over the next ten days, Boros experienced other seizures because of the accident. Boros' physician reported these seizures to the Department. The Department requested that Boros have his physician complete and return the Department's convulsive disorder form. The physician completed that form and indicated that Boros suffered his last seizure on January 21, 1987, and was being treated with Dilantin. Additionally, the physician answered affirmatively Question No. 7 [4] on the convulsive disorder form and answered negatively Question No. 8 [5] on said form. Reproduced Record at 104a.

The Department received the convulsive disorder form. Subsequently, the Department recalled Boros' operating privilege pursuant to 67 Pa.Code § 83.4. [6] Boros appealed the Department's recall of his driver's license to the Court of Common Pleas.

The Court of Common Pleas held a *de novo* hearing on the appeal wherein the Department presented documents which included the convulsive disorder form. Boros testified on his own behalf. He claimed that he had not had a seizure since January 21, 1987, and was taking his daily dose of Dilantin.

4. Question No. 7 asks:

   From a medical standpoint only, do you consider this person physically and/or mentally competent to operate a motor vehicle? Yes ___ No ___

   Reproduced Record at 20a, 69a and 104a.

5. Question No. 8 asks:

   Does he have any other conditions or diseases which could decrease his ability to operate a motor vehicle?

   Reproduced Record at 20a, 69a and 104a.

6. 67 Pa.Code § 83.4 provides in pertinent part:

   A person suffering from epilepsy may not drive unless their personal licensed physician reports that the person has been free from seizure for a period of a least 1 year immediately preceding, with or without medication.

   67 Pa.Code § 83.4(a).

Boros also testified that his physician allowed him to return to work in February of 1987. The trial court sustained Boros' appeal, and held that the mandatory minimum license suspension was substantively unreasonable and procedurally offensive to due process. *Boros Appeal*, No. 87–3644 (Court of Common Pleas, Washington County, November 17, 1987).

NO. 36 W.D. APPEAL DOCKET 1990

Cheryl Lynn Brown, appellee, is an epileptic who suffered a *grand mal* seizure on July 17, 1986. The seizure was reported to the Department by her physician on July 25, 1986. The Department requested that Brown's physician complete and return the Department's convulsive disorder form in order for the Department to determine Brown's medical condition. On that form, Brown's physician indicated that Brown had a seizure on July 17, 1986, and was being medicated with daily doses of Phenobarbital. Additionally, the physician also answered affirmatively Question No. 7[7] on the convulsive disorder form and answered negatively Question No. 8[8] on said form. Reproduced Record at 69a.

The Department received the convulsive disorder form. Consistent with 67 Pa.Code § 83.4, the Department recalled Brown's operating privilege. Brown appealed the Department's recall of her driver's license to the Court of Common Pleas.

The Court of Common Pleas held a *de novo* hearing on Brown's appeal. At the hearing, the Department introduced into evidence a packet of documents which included the convulsive disorder form completed by Brown's physician, her driving record and the Department's notice of recall. Brown presented no medical evidence but did testify on her own behalf. Brown testified that she was under a doctor's care for her epilepsy and had not suffered a seizure since July of 1986. The trial court sustained Brown's appeal and again held that the mandatory minimum license suspension was substantively unreasonable and procedurally offensive to due process.

7. See note 4, *supra.*

8. See note 5, *supra.*

*Brown Appeal,* No. 5945 of 1986 (Court of Common Pleas, Washington County, June 30, 1987).

### No. 37 W.D. Appeal Docket 1990

David A. Clayton, Sr., appellee, is an epileptic who had a *grand mal* seizure on September 5, 1986. Clayton's physician reported the seizure to the Department by letter dated September 18, 1986. The Department requested that Clayton's physician complete and return the Department's convulsive disorder form. The physician completed the form indicating that Clayton suffered a seizure on September 5, 1986, and was being treated for a seizure disorder. Similar to the physicians for appellees Boros and Brown, Clayton's physician answered affirmatively Question No. 7 [9] on the convulsive disorder form and answered negatively Question No. 8.[10] Reproduced Record at 20a. The Physician also noted that Clayton was prescribed Dilantin to control his epilepsy.

The Department received the convulsive disorder form and recalled Clayton's operating privilege pursuant to 67 Pa.Code § 83.4. Clayton appealed the Department's recall of his driver's license to the Court of Common Pleas.

The Court of Common Pleas held a *de novo* hearing on Clayton's appeal. At the hearing, the Department introduced documents which included medical reports that Clayton had suffered a seizure on September 5, 1986. Clayton testified on his own behalf. Clayton's counsel also placed into evidence a questionnaire, prepared by Clayton's counsel and completed by Clayton's physician. The physician stated on the questionnaire that Clayton was physically competent to operate a motor vehicle. The physician additionally stated that if Clayton was seizure-free for thirty (30) days that he would likely be seizure-free for a year. The trial court sustained Clayton's appeal and, as in the other two appeals, held that the mandatory minimum license suspension was substantively unreasonable and procedurally offensive to due process. *Clayton Ap-*

9. See note 4, *supra.*

10. See note 5, *supra.*

*peal,* No. 6681 of 1986 (Court of Common Pleas, Washington County, April 6, 1987).

## II. Proceedings in the Commonwealth Court

Subsequent to consolidating these three cases, the Commonwealth Court, on April 25, 1989, issued an order inviting the parties to submit supplemental briefs "asking specifically that the parties examine a potential affirmative defense in the context of the Rehabilitation Act." *Commonwealth of Pennsylvania, Dep't of Transp., Bureau of Driver Licensing v. Brown,* 125 Pa.Commw. 372, 375, 558 A.2d 121, 123 (1989). The Commonwealth Court stated that "although none of these drivers raised the defense of the Rehabilitation Act, the judges ... upheld similar affirmative defenses by concluding that [the Department's] applicable regulations were unreasonable...." *Id.* The Commonwealth Court found that the Rehabilitation Act was applicable in this case and remanded the matter to the trial court to "make findings of fact concerning (1) whether there is an appreciable risk that the drivers are not competent to drive ...; and, (2) whether an accommodation of these individuals, and those similarly situated, would unduly burden the Department." *Id.* at 378, 558 A.2d at 124.

## III. Analysis

■ We begin our analysis by recognizing that there is a common issue that is dispositive of the appeals before us. That question is whether the Commonwealth Court properly relied upon Section 504 of the Rehabilitation Act where that Act had neither been raised as an affirmative defense in the proceedings before the trial court nor argued in the appeal.

The Department objects to the Commonwealth Court's raising, *sua sponte,* Section 504 of the Rehabilitation Act and its reliance thereon. The Department argues that Rule 302(a) of the Pennsylvania Rules of Appellate Procedure prevents a party from raising for the first time on appeal an issue that was not raised in the lower court. The Department submits that the failure of a party to raise an issue before the trial court, therefore, constitutes a waiver of that issue for the

purposes of appeal. *Yudacufski v. Commonwealth, Dep't of Transp.,* 499 Pa. 605, 454 A.2d 923 (1982).

We agree with the Department's objection to the Commonwealth Court's reliance on Section 504 of the Rehabilitation Act and with the argument that the appellees waived the application of the Rehabilitation Act for purposes of appeal. Moreover, we find the Commonwealth Court's raising, *sua sponte,* Section 504 of the Rehabilitation Act as an affirmative defense and its reliance thereon where the Act had not been raised in the trial court to be jurisprudentially unsound.

█ Where the lower court has heard the case *de novo,* the Commonwealth Court's proper scope of review is to determine whether the facts found by the trial court are supported by competent evidence and to correct any conclusions of law erroneously made. *Knoche v. Commonwealth, Dep't of Transp.,* 70 Pa.Commw. 430, 433, 453 A.2d 690, 692 (1982); *McKay v. Commonwealth,* 52 Pa.Commw. 24, 28, 415 A.2d 910, 912 (1980), *appeal dismissed,* 499 Pa. 223, 452 A.2d 1019 (1982). However, the Commonwealth Court did not comply with this standard. The trial court concluded as a matter of law that the mandatory minimum license suspension was substantively unreasonable and procedurally offensive to due process. The Commonwealth Court was restricted, therefore, to determine whether the facts found by the trial court were supported by competent evidence and to examine the conclusions of law. Specifically, the Commonwealth Court should have determined whether the trial court erred in finding that the mandatory minimum license suspension was substantively unreasonable and procedurally offensive to due process and whether the facts found by the trial court were supported by competent evidence.

█ The Commonwealth Court did not have the power to introduce the Rehabilitation Act into the appellate proceedings where none of the parties addressed the application of the Rehabilitation Act in license revocation cases in the Court of Common Pleas. An appellate court does not sit to review questions that were neither raised, tried, nor considered in the

trial court. *Fisher v. Brick,* 358 Pa. 260, 264, 56 A.2d 213, 215 (1948). Moreover, an appellate court can only pass upon the legal question involved in any case which comes before it. *Francis v. Neville Township,* 372 Pa. 77, 81, 92 A.2d 892, 894 (1952). The Rehabilitation Act was not an issue involved in the cases before the Commonwealth Court since none of the parties argued that issue in their initial briefs filed with the Commonwealth Court.

We find nothing in the record that supports the Commonwealth Court's finding that the affirmative defenses raised in the trial court were similar enough to Section 504 of the Rehabilitation Act to justify the Commonwealth Court raising, *sua sponte,* that Act as an affirmative defense. Moreover, we reject the Commonwealth Court's reasoning that the appellees did not argue and the trial judge did not apply the Rehabilitation Act because they did not have the benefit of the Commonwealth Court decision in *In re Appeal of Stober,* 119 Pa. Commw. 156, 546 A.2d 155 (1988), *confirming* 524 A.2d 535 (Pa.Cmwlth.1987), which accepted the affirmative defense of the Rehabilitation Act. On September 26, 1973, Congress passed the Rehabilitation Act, Pub.L. No. 93–112, 87 Stat. 357 (codified as amended at 29 U.S.C. §§ 701 to 796i (1988)). Therefore, the appellees were capable of raising the affirmative defense of Section 504 of the Rehabilitation Act in the Court of Common Pleas. The Commonwealth Court's introduction of the Rehabilitation Act into this matter and its determination pursuant to that Act were jurisprudentially unsound.

Accordingly, the Commonwealth Court order is vacated and the matter is remanded to the Commonwealth Court for a determination of the issues initially raised by the parties. Additionally, the appeal at No. 38 W.D. Appeal Docket 1990 is dismissed as moot.

McDERMOTT, J., did not participate in the decision of this case.